The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE                                    DOCKET NUMBER

DATE  2/16/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO. _____ |
| | * | |
| 14 PIT BULL-TYPE DOGS, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | ****** | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the United States of America, Plaintiff in this action, by and through its attorneys, Jonathan F. Lenzner, Acting United States Attorney for the District of Maryland, and Darryl L. Tarver, Assistant United States Attorney, pursuant to 7 U.S.C. § 2156(e), bring this verified complaint for forfeiture *in rem* against 14 pit bull-type dogs and alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is a civil action *in rem* against 14 pit bull-type dogs that were involved in a violation of the animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156 (Asset ID: 21-FBI-001125) (the "Defendant Dogs"), and therefore should be forfeited to the United States pursuant to 7 U.S.C. § 2156.

## THE DEFENDANTS *IN REM*

2. The Defendants *in rem* are fourteen pit bull-type dogs of varying colors. The Defendant Dogs were seized on or about December 15, 2020, from 1509 North Smallwood Street,

1

Baltimore, Maryland 21216, pursuant to the execution of a federal search and seizure warrant issued by United States Magistrate Judge Thomas M. DiGirolamo.

3. The Defendant Dogs were seized by the U.S. Marshals Service and are being cared for by a contractor, which is providing the dogs with round the clock access to veterinary services and rehabilitation services, including training.

4. The United States bring this action *in rem* in its own right to forfeit all right, title and interest in the Defendant Dogs.

5. The forfeiture is based upon, but not limited to, the evidence outlined in the attached Declaration of David Vallario, Special Agent with the Federal Bureau of Investigation, attached hereto as Exhibit A, and incorporated herein by reference.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 7 U.S.C. § 2156.

7. This court has *in rem* jurisdiction over the Defendant Dogs under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the Plaintiff will execute upon the Defendant Dogs pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because acts and omissions giving rise to the forfeiture took place in the District of Maryland, and pursuant to 28 U.S.C. § 1395 because the Defendant Dogs are located in this district.

## **LEGAL BASIS FOR FORFEITURE**

9. Title 7, United States Code, Section 2156(e) subjects to forfeiture any animal involved in a violation of the federal animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

10. The Defendant Dogs are subject to forfeiture to the United States pursuant to 7 U.S.C. § 2156(e), as animals involved in a violation of the federal animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

**WHEREFORE**, the Plaintiff, the United States of America, respectfully requests that process of forfeiture be issued against the Defendant Dogs, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed, that the judgement be entered declaring the Defendants *in rem* be forfeited to the United States for disposition according to law, that the Court enter judgment for costs associated with the care of the Defendants *in rem* pursuant to 7 U.S.C. § 2156(e) should any interested party file a claim for the Defendant Dogs, and that the United States be granted such other relief as this Court may deem just and proper.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

　/s/
Darryl L. Tarver
Assistant United States Attorney
United States Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4946

## **VERIFICATION**

I, David Vallario, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture is based on reports and information known to me and/or furnished to me by other law enforcement agents and that that everything represented herein is true and correct.

Date: 2/16/21

*D. Vallario*
David Vallario
Special Agent
Federal Bureau of Investigation

# EXHIBIT A

## DECLARATION IN SUPPORT OF VERIFIED COMPLAINT
## FOR FORFEITURE *IN REM*

I, David Vallario, Special Agent of the Federal Bureau of Investigation ("FBI"), hereby state, pursuant to Title 28 of the United States Code, Section 1746, under penalty of perjury and pursuant to the laws of the United States, that the following information is true and correct:

1.   This Declaration is made in support of the Verified Complaint for Forfeiture *In Rem* of 14 pit bull-type dogs seized from 5901 North Smallwood Street, Baltimore, Maryland 21216 ("North Smallwood Street Premises").

2.   I have been employed as a Special Agent with the FBI since 2015. During my employment with the FBI, I have investigated numerous violations of federal and state law to include drug trafficking, public corruption, assaults on law enforcement officers, alien smuggling, homicide, transnational criminal organizations, gangs, money laundering, and dog fighting.

3.   As part of my duties as a Special Agent with the FBI, I have participated in an investigation involving illegal animal fighting, and I have received specialized training in the investigation of animal fighting and related Title 18 offenses. Through my training and experience, I am familiar with the actions, traits, habits, and terminology used by handlers or owners of dogs involved in animal fighting ventures.

4.   I am familiar with the facts set forth in this Declaration based on my personal observations and information provided to me by other law enforcement personnel participating in this investigation.

5.   Because this Declaration, together with the Verified Complaint for Forfeiture *In Rem*, is being filed for the purpose of establishing grounds for forfeiture and providing notice to interested persons, it does not include all of the information known by the Government in

connection with the investigation underlying the claims for forfeiture set forth herein.

## BACKGROUND ON DOG FIGHTING

6. The following information is based on my training and experience investigating animal fighting ventures, and on information provided to me by other law enforcement personnel. In the United States, dog fighting ventures involve "pit bull"-type dogs, which dog fighters prefer for their compact muscular build, short coat, and the aggression that some display toward other dogs. A dog fight occurs when two dogs are knowingly released by their handlers in a controlled environment to attack each other and fight. The fight ends when one dog withdraws, when a handler "picks up" their dog and forfeits the match, or when one or both dogs die.

7. Because of their conditioning and training, dogs used in animal fighting ventures are housed separately from other dogs–in pens, cages, or on chains–so that they will not hurt or kill other dogs when the handler is absent.

8. Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively. They maintain contact with other dog fighters around the country and can generate substantial income from gambling on dog fights and from the sale and breeding of fighting animals.

9. Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight only those dogs that display particular traits. Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury. Dogs displaying these attributes are often

bred with other dogs displaying similar traits to enhance the "bloodline" of these dogs for fighting purposes. Dog fighters keep such dogs solely for fighting purposes.

10. The most common way that a dog fighter tests a particular dog to ascertain whether the dog is "game" is to "roll" the dog. A "roll" is a dog fight conducted for purposes of "game-testing" rather than for wagering. "Roll" fights generally last from five to fifteen minutes, at which point the handlers usually stop the fight. However, "roll" fights can result in serious injury or death to one or both dogs.

11. Not all dogs in a litter of puppies bred from fighting dogs will show an inclination to fight. Dog fighters refer to dogs who do not demonstrate fighting instinct by the time they reach maturity as "cold" or "shy." Because such dogs have no value to a dog fighting operation, they are often "culled," to use a word employed by dog fighters. To avoid public scrutiny, dog fighters typically do not sell these dogs to non-dog fighters or take them to an animal shelter. "Culling" generally results in the death of these animals. Federal agents are aware of dog fighting targets and defendants having killed dogs by shooting them, strangling them, bludgeoning them, or drowning them.

12. It is a common practice for those involved in training and exhibiting fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters maintain a stock of dogs at different weights and both sexes because, in dog fights, dogs are matched against other dogs of the same sex to within a pound of the same weight. Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match solicited by an opponent. Second, dog fighters also maintain multiple

3

dogs to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting "bloodline."

13. Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Possessing multiple dogs also increases the prospects of owning a dog who will become a Champion or Grand Champion. Dog fighters also routinely test and "roll" their dogs, including against their own dogs. Dog fighters commonly keep these inventories in places that are easily accessible, like inside their homes.

14. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

15. Dog fights typically involve consistent practices leading up to and during the fight.

16. Fighting dog owners or handlers enter into a verbal or written contract with their opponent several weeks before the dog fight, often referred to as a "match" or "show." The owners or handlers agree upon: (1) the sex and weight of the dogs at the time of the fight; (2) the geographic area in which the fight will occur (the exact location of which is often a guarded secret until shortly before the fight); (3) a referee; (4) the payment of "forfeit" money that is lost if one participant pulls out of the match or if a participant's dog does not arrive at the agreed-upon weight; and (5) monetary wagers placed by the respective fighters.

17. It can be challenging for dog fighters to find an opponent with a dog of the same weight and sex who is looking to fight that dog at the same time of year, and for a wager that is mutually agreeable to both parties. For that reason, dog fighters rely heavily on each other and on extensive networks of contacts to find an opponent who has a dog of the same weight and sex and who is looking to fight that dog at the same time of the year. The practice is known as "calling

out a weight." Dog fighters often "call out a weight" to known dog fighters in several states, to increase their odds of finding a match. "Calling out a weight" is done by telephone, text message, e-mail, or other electronic communication. It is an integral practice without which many dog fights would not occur.

18. Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up. The dog then undergoes a conditioning process that dog handlers refer to as a "keep. A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program including: treadmills used to run and exercise the dogs away from public view; weighted chains and pulling devices used to increase the dog's strength and stamina; the use of devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression; water-based training such as tethering a dog to a cable running across a pool; and the administration of drugs, legal and illegal, including steroids to build muscle mass and aggression.

19. Dogs matched for future fights are expected to achieve their established target weight by the scheduled match, much like in human boxing matches, requiring close attention to a dog's routine. Training can take place in a dog fighter's "yard" or indoors away from public view, such as in a basement.

20. Although dogs used for fighting are often housed outside, as the match date approaches, a dog in a keep may be housed indoors or near the owner/handler for several reasons. One reason is to prevent the dog from becoming sick or injured by other dogs before the match, which could cause the dog to forfeit and the owner to pay a forfeit fee. Another reason is that dogs in a keep require constant exercise and monitoring, which is easier when the dog is in close vicinity rather than off-site or outside. Dogs intended for fighting purposes are also often housed inside

residences if they are injured, ill, pregnant, weaning, or if a dog fighter does not have another location to keep them or wants to keep them out of view.

21. Dog fighters sometimes breed their own fighting dogs from dogs they already own, and sometimes buy fighting dogs from other dog fighters, either as adult dogs or puppies. When dog fighters acquire dogs from other dog fighters, they sometimes do so to integrate desired fighting traits or "bloodlines" from other dog fighters into their own stock.

22. Some dog fighters are selective about who they will sell fighting dogs to, because the success of that dog in the fighting ring will reflect on the seller whose "bloodline" is represented by the dog. A dog that produces multiple offspring that go on to be "Champions" (*i.e.*, winning three or more dog fights) is bestowed the "Register of Merit" ("ROM") or "Producer of Record ("POR") title. This provides incentive to the seller to sell dogs to capable dog fighters, with the intention that the dogs will be fought.

23. Dog fighters today tend to communicate with each other via phone, text messages, social media, e-mail, or website chat rooms dedicated to "game dogs." Dog fighters routinely set-up matches and exchange documents, expertise, photographs, or videos relating to dog fighting activities via text message and other electronic means. Dog fighters exchange photographs and videos of dogs, for example, to demonstrate a dog's conformation or build, gameness, and other fighting qualities, when soliciting or advertising a dog for purposes of buying, breeding, or arranging a fight.

**DEFENDANT DOGS**

24. On or about December 14, 2020, a federal warrant was issued by United States Magistrate Judge Thomas M. DiGirolamo for the seizure of various items, including the seized dogs described below.

25. On December 15, 2020, I arrived at the North Smallwood Street Premises at approximately 6:04 a.m. with officials from the U.S. Marshals Service.

26. The North Smallwood Street Premises is a two-story townhouse with white siding, a covered porch, and a basement in an urban neighborhood of row houses in downtown Baltimore.

27. In the basement, there was an area of storage for unused crates, medications, and dog supplies.

28. At the back of the basement to the right of the door leading out to the backyard were plastic crates stacked on top of each other containing dogs and puppies. This arrangement is consistent with situations in which dogs are possessed and/or trained for participation in an animal fighting venture.

29. The dogs located in the crates did not have food or water. The basement area where the dogs were located was minimally lit.

30. The following dogs were seized from the North Smallwood Street Premises during execution of the seizure warrant on December 15, 2020 (Asset ID: 21-FBI-001125):

    a. USM-599 (a black and white male pit bull-type dog exhibiting scarring on its front legs and right rear leg and cowering behavior);

    b. USM-600 (a black and white male pit bull-type exhibiting scarring on its rear legs and right front leg, and a fresh wound on its left rear leg);

c. USM-601 (a red female pit bull-type dog exhibiting scarring on its face and fresh wounds on its right lip and right front leg);

d. USM-602 (an underweight red and white female pit bull-type dog exhibiting scarring on its rear legs, right front leg, neck, head, and face and signs of being bred recently, including sore nipples);

e. USM-603 (a black and white male pit bull-type dog exhibiting scarring on its right rear leg);

f. USM-604 (a brown and white male pit bull-type dog exhibiting scarring on its face, cowering behavior, and signs of dog aggression);

g. USM-605 (a black and white female pit bull-type puppy exhibiting a fresh wound on its right ear);

h. USM-606 (a black and white female pit bull-type dog exhibiting scarring on its hind quarters, left and right sides, rear legs, face, right front leg, mouth, fresh wounds on its nose and left rear leg, and signs of recently being bred);

i. USM-607 (a black and white male pit bull-type puppy exhibiting scarring on its face);

j. USM-608 (a black and white male pit bull-type puppy);

k. USM-609 (a black and white female pit bull-type puppy exhibiting scarring on its right front leg and face);

l. USM-610 (a black and white male pit bull-type puppy);

m. USM-611 (a black and white female pit bull-type puppy exhibiting scarring on its left rear leg); and

8

   n. USM-612 (a tan male pit bull-type puppy)

(collectively, the "Defendant Dogs").

  31. Five of the Defendant Dogs tested positive for hookworms (USM-607, USM-608, USM-609, USM-610, and USM-611), while three tested positive for roundworms (USM-601, USM-602, and USM-603).

  32. In sum, the condition in which the Defendant Dogs were found was not consistent with that of pet dogs of a comparable age.

  33. Additionally, a number of items commonly associated with an illegal dog fighting operation were observed and/or seized. For example, dog fighters often attempt to mend the injuries of their dogs rather than seek veterinary attention, which may raise suspicion regarding the cause of injuries. Thus, it is common to find veterinary supplies where dogs involved in dog fighting are being kept. The following products were seized from the North Smallwood Street Premises:

   a. an antibiotic, Cephalxin;

   b. an antiparisitic, Ivermectin;

   c. an anti-inflammatory, Carprofen;

   d. a roundworm dewormer, Albendazole.

## CONCLUSION

Based on the foregoing facts and my training and experience, I maintain there is probable cause to believe that the Defendant Dogs seized from 5901 North Smallwood Road, Baltimore, Maryland 21216 on December 15, 2020, are involved in a violation of Title 7, United States Code, Section 2156 and are, therefore, subject to forfeiture pursuant to Title 7, United States Code, Section 2156(e).

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this __16__ day of February 2021.

*D. Vallario*
David Vallario
Special Agent
Federal Bureau of Investigation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO. _____ |
| | * | |
| **14 PIT BULL TYPE DOGS,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

**WARRANT FOR ARREST *IN REM***

TO:   THE MARSHAL OF THE UNITED STATES AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER

WHEREAS, on _____, the United States of America filed a verified complaint for civil forfeiture *in rem* in the United States District Court for the District of Maryland against the above-named Defendant Property, alleging that said Defendant Property is subject to seizure and civil forfeiture to the United States for the reasons mentioned in the complaint; and

WHEREAS, the Defendant Property is currently in the possession, custody, or control of the United States; and

WHEREAS, in these circumstances Supplemental Rule G(3)(b)(i) directs the Clerk of the Court to issue an arrest warrant *in rem* for the arrest of the Defendant Property; and

WHEREAS, Supplemental Rule G(3)(c) provides that the warrant of arrest *in rem* must be delivered to a person or organization authorized to execute it;

NOW THEREFORE you are hereby commanded to arrest the above-named Defendant Property by serving a copy of this warrant on the custodian in whose possession, custody or control

2

the Defendant Property is presently found, and to use whatever means may be appropriate to protect and maintain the Defendant Property in your custody until further order of this Court.

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Date: _____

                              Clerk of the Court
                              United States District Court

By: _____
       Deputy Clerk